Danforth, J.
 

 The defendant with knowledge that it was to be used for the carriage of lumber over its tracks and by its servants, delivered at its station in Webster, to one Lewis, a platform car. To the sills of this car on each side six permanent loops or iron pockets were securely bolted. These were purposed and intended for the reception of stakes or standards in order that so equipped, the car would be adapted for carrying a loose load such as lumber or the like. The stakes were not furnished with the car. Lewis had never before loaded a car. On this occasion he put a stake in each of four pockets on either side of the car, and piled on and arranged the lumber under the direction of the defendant’s station agent, who regulated the length of the stakes. The car was then added to a freight train on which the plaintiff was employed as
 
 *10
 
 brakeman, and in the performance of his duty he was necessarily upon the car while the train was going around a curve at a high rate of speed. At that moment one of the stakes broke and by reason thereof, he without fault on his part was thrown with the lumber upon the track and by the fall severely injured. Upon examination it was found that the stake in question was made, ‘ ‘ of very poor white wood, brash, brittle wood and partially decayed. The outside was spongy, like a cork where it had been shaved off with an axe. It was a dead stick and had lost its strength and was punky. It had broken off almost even with the top of the stake hole.” It did not appear that the defendant had made any rules or directions as to the inspection of such cars, or that any agent of the company except as above-mentioned, superintended the putting in of the stakes. The station master testified that he had ‘ ‘ no printed instructions in regard to loading the cars or anything on that subject,” or in regard to seeing how the stakes were, but only generally that he wanted to see that everything was in order; he had no special instructions. The defendant, however, relies upon its “system.” That was to let the shipper load and stake, and as to inspection, the evidence relied upon in its behalf only tends to show that if in the general performance of the duties of their employment, the station agent found anything out of the way, he should correct it, or if the conductor or brakeman saw a defect, he should report it to the station master. No special duty was imposed on either in regard to inspection, nor direction given as to its manner. Care in all matters was enjoined upon them as a part of a servant’s duty to his employer; nothing more.
 

 The defendant moved for a non-suit upon the grounds that no cause of action has been established by the evidence, that no negligence on the part of' the defendant has been established by the evidence such as would sustain the action.
 

 That whatever negligence may have been shown if any in this case, is the negligence of co-employees of the defendant for which the defendant is not responsible.
 

 That the plaintiff’s own negligence contributed to his injury in such a way as to defeat his right of action.
 

 The plaintiff asked to go to the jury upon the questions:
 

 First.
 
 the company should not have made and promulgated rules in respect to the inspection of the cars that were to transport the lumber in regard to the stakes.
 

 Second.
 
 Whether the company exercised due care in furnishing safe and suitable machinery, means and appliances for the running of this car.
 

 Third.
 
 Whether the defendant was guilty of any negli
 
 *11
 
 gence which contributed to the injury sustained by the plaintiff. *
 

 Fourth.
 
 Whether the plaintiff himself was guilty of any fault or negligence on his part which contributed to the injury.
 

 The court expressed the opinion that, whether the plaintiff was guilty of any negligence which contributed to the injury would be a question for the jury if the case were submitted to them, but refused to submit any question to the jury and granted the motion for a non-suit, and the plaintiff’s counsel excepted. The exceptions were ordered to be heard at the general term in the first instance. That court was of opinion that the case was one for a jury and directed a new trial. Against that decision the defendant appeals and makes the following points:
 

 First.
 
 That the stakes- were not appliances or machinery within the rule which requires a master to furnish with reasonable care, proper and adequate machinery or other appliances for the proposed work, but on the contrary the defendant says they “were appliances furnished and employed by the shipper in loading the car with lumber to be transported by the defendant.”
 

 Personal negligence is the gist of the action, and the duties referred to in the rule cited are those of the master, and he cannot evade the responsibilities incident thereto by delegation of them to another. Whoever does the act by his appointment or permission represents, and as to that act is the master. To hold otherwise would exempt a corporation from all liability, and we must, at the outset, determine to which of the acts the one complained of belongs. Did the stakes form a part of the car, or were they an incident to the load? It was proven that the transportation of lumber was a considerable part of the defendant’s business. We may take notice of the fact that such freight is common to all railways. It is in evidence also that the stakes were necessary and usual in preparing for such a load. The car actually furnished indicated by the iron sockets where such stakes should be placed and was arranged and prepared for them. Had the car, when sent to the shipper, been equipped with stakes and so ready for use, I suppose that no one would doubt that for any accident arising from the unfit material of which they were made, •or from imperfect construction, the owner would be liable. If the iron socket had broken from a known defect in the iron, or from a known imperfect connection with the car, and the plaintiff from that cause received the injury from which he now suffers, or if the sill of the car to which the socket was fastened had given way by reason of inherent weakness, the result would be the same. This consequence
 
 *12
 
 follows because experience has shown that, owing to the rapid speed at which the train travels and the violent shocks to which a car is sometimes exposed, every part of it must be made of great strength. This rule should apply to any appliance which is made part of the structure, and it can make no difference that it may be for an occasion rather than constant use. The question relates to the condition of the car when placed in the hands of the servant, and its delivery to him raises for his benefit the implication that the employer has used suitable care and foresight in adopting it as an instrument or means to carry on its business. Upon this he might rely as an assurance not only that the body of the car and its running-gear were safe, but that the needed requirement for the reception of the load placed upon it was also fit for the purpose. The platform and the stakes constituted the bottom and the sides of the car, and one was as much a part of it as the other.
 

 Moreover, it was the duty of the defendant, by virtue of the statute, which created it and made it in many ways as the price of its existence, a public servant, not only to ‘ ‘ take ” the freight offered, and regulate “ the time and manner ” in which it should be transported, but also furnish sufficient accommodation for its transportation, as well as for the transportation of passengers, and anticipating the variety of cars which that duty would require, the statute names not only passenger cars, baggage cars, freight cars and merchandise cars, but also “lumber cars,”
 
 eo nomine
 
 (§ 38, Act of 1850, chap. 140), and even points out the place they shall occupy in the making up of certain trains. This provision is also incorporated into the Penal Code (§ 422). The stakes pertained to the “manner” and were part of the accommodations furnished for transportation of the lumber; they were not part of the load, nor appurtenant thereto. They belonged to the car as a “lumber car.” With stakes the car in question was fitted to carry lumber and was a lumber car; without stakes, it was not. Of course the stakes served to secure or keep the load upon the car, but that would be through the construction of the car, and not through the application of the stakes to the load. The platform of the car prevented the lumber from falling through; the stakes of the car were designed to prevent it from falling off. The stakes were not a temporary expedient, as a rope binding the load or a block at the wheels of a carriage. To remove a load so bound, the rope must be taken away, and if another load is put on, it must be rebound; and so with the block. But the stakes, like the bottom or platform of the car, remain after the load is removed, and the car without alteration remains ready to-receive another load. The duty, therefore, was upon the
 
 *13
 
 master to fit or prepare the car for the use to which it was consigned, and no encouragement should be given to an omission to perform that duty, or to negligence or failure in any degree in respect to it. On the contrary, a just public policy, as well as that of the statute, requires a court to hold a railroad company to a strict observance of its obligation.
 

 Second.
 
 The next proposition of the defendant is that, “it is not necessary in this case to decide whether the stakes in question were or were not appliances or machinery within the meaning of the rule invoked by the supreme court at general term” (and to which I have above-referred), “for the reason that the system under which they were furnished, inspected and employed, was perfectly well known to the plaintiff, and he took the risks of the consequences of that system.”
 

 There was no system as to this matter. If the evidence shows that such practices had obtained before, it merely shows that the defendant chose to delegate a duty to the shipper which itself should have performed. It is equally responsible for his negligence; his negligence is its negligence.
 

 Third.
 
 But the defendant says: “Assuming that the stake in question was a machine or apparatus within the meaning of the said rule, if there was any negligence in respect thereto it was the negligence either of the shipper of the lumber, or on the part of the co-employees of the plaintiff, and this action cannot be maintained for such negligence.” If I am right in the views already expressed, the negligence was the negligence of the master and one which he could not so delegate as to relieve himself.
 

 The points of the appellant state that by the system employed, the loading was to be done by the shipper. It is unnecessary to say what the defendant’s case would be if the defect complained of had been in that act. It was not. It was in preparing the car to receive and hold the load. The load might have been removed altogether without remedying the defect, or mathematically adjusted in its bearings without preventing the consequences for which compensation is now asked. The defect was in the car as a “lumber car.”
 

 Fourth.
 
 So far as the remaining point made against the judgment denies negligence in respect to the quality of the stakes, it is sufficient to refer to the evidence above recited, and to which there was no answer or contradiction, to show that wood was used in their formation, which in its best condition was soft and feeble, and which in fact was unsound and decayed, and this was obvious to anyone upon inspection. But it is also said, that: “ Under the system
 
 *14
 
 adopted the only possible negligence for which the defendant could be responsible was in the inspection; and it is-submitted that the jury should not have been permitted to find negligence in inspection as an affirmative fact upon the uncorroborated statement of the witness Eygabroat.”' This witness was an employee of the defendant and on its. train. He saw the accident, the timber falling from the-train, and the plaintiff falling with it. The train was stopped, the plaintiff picked up and the stake examined. He says: “I observed that one of the stakes was broken. It was a very poor white wood, brash, brittle wood, and! partially decayed. It was broken off about even with the top of the stake hole * * * the end that was broken off looked to me like a stake that had been cut out of a dead tree, and it looked as if it was dozy and partially decayed. The outside of it was spongy and like a cork where it had been shaved off with an axe.”
 

 There is other evidence to the same effect coming from the defendant’s employees called by the plaintiff, as well as other persons, and no witnesses called by the defendant,, nor contradiction of plaintiff’s witnesses at any point. There was a large amount of testimony for the jury. There were no rules Of the company requiring inspection, nor was there any but casual inspection given by the station agent, according to his custom, of the stakes and load, and by others, to see if the load was rightly placed. As to these persons, the question would not be whether they believed the stake sound but whether they wrere justified in so believing. But the main question was whether the corporation, by any of its agents, failed to exercise due care to-prevent injury to the plaintiff from defects in the car furnished for his use. The rule as to its duty was again formulated in
 
 Abel
 
 v.
 
 President, etc., D. and H. Co.,
 
 (103 N. Y., 581; 4 N. Y. State Rep., 269), where the court said, in substance, “that the law imposes on a railroad company the duty to its employees of diligence and care, not only in furnishing proper and reasonably safe appliances and machinery, and skillful and careful co-employees, but-also of making and promulgating rules, which, if faithfully observed, will give reasonable protection to the employees.”' Under each branch of this rule, then there was a question, for the jury in this case, and the general term committed no error in reversing the decision of the trial judge and granting a new trial. As the appeal of the defendant has. provided that the order of the general term should be affirmed, and in pursuance of the stipulation which made-the appeal possible, the plaintiff must have judgment absolute in his favor.
 

 The order appealed from is, therefore affirmed and judg
 
 *15
 
 ment absolute ordered for the plaintiff, with costs in all courts.
 

 All concur, except Bapallo, J., absent