Clement, Ch. J.
This action was brought by an administratrix to recover damages for the death of one John Brown, who was killed on May 5, 1886. The plaintiff was non-suited at the trial term, and from the judgment of dis missal this appeal is taken. The complaint sets forth that on the oth day of May, 1886, John Brown was in the employ of the defendant, to drive his horse and carriage on the streets of the city of Brooklyn. That the defendant was negligent in that he provided for him to use in the discharge of the duties of said employment an unsafe harness, which tlie defendant knew or ought to have known by the *756 exercise of proper care. That by reason of said want of care of the defendant on said 5th day of May, 1886, while the said harness was used by Brown in driving the horse of the defendant, the bit, by reason of its defective condition, broke, and the horse ran away, and the said John Brown was thrown out of the carriage, and was so injured that he died on the same day. The complaint alleged a cause of action against the defendant, and the questions we are called upon to decide are whether there was testimony to sustain the material allegations.
The deceased was employed at defendant’s place, and it is fair to assume that he was employed by the defendant and not by his wife, and on May 5th was ordered by the wife of defendant to go to a Every stable in the afternoon and get a horse and carriage to take her out for a ride. Mrs. Smith testified that the horse belonged to her son. Thomas Quinn testified to a conversation with the defendant. “I told him (the defendant) his harness went away when he sold the mare, when the mare went away. He said is that so; all right.” The answer of the wife of the defendant to the question was not responsive, and the motion to strike out should have been granted, and the testimony of Quinn makes out a prima facie case that the defendant owned the horse, There was no dispute that the deceased was directed by the wife of defendant to drive her out, and there was proof that the harness belonged to the defendant, and that the wife was in the habit of using the horse and the harness, and whether the horse belonged to the defendant or his son would not be material if the wife used it with a harness belonging to the defendant and with his knowledge. There was sufficient testimony to go to the jury, whether the deceased was in the employ of the defendant when he was driving out the horse and carriage.
The next question tobe considered is whether the deceased was killed by reason of the breaking of the bits. The testimony showed that Brown fully understood the management of horses, and that the wife of the defendant had on many occasions been driven out with the same horse, from which it is fair to infer that the defendant did not consider the horse one liable to run away. That the horse left the stable on the jump, and was on a full run at Washington avenue, only one block from the stable, and that the deceased jumped out before he had reached the second block. That there was nothing unusual to frighten the horse, and there was also proof that the horse was properly harnessed, and that, when stopped finally, the bits were broken; but they were not broken when the horse went out of the stable doori The horse had not been taken out of the stable for about a week before the accident. The proofs were sufii- ■ cient to go to the jury whether or not the horse fan away *757 by reason of the fact that the bit was broken, and the_ deceased was therefore unable to control the horse. The jury should have decided whether the breaking of the bit caused the horse to run away, or the running away caused the breaking of the bit. It could be fairly argued that the horse, after having been confined in the stable for a week without sufficient exercise, started out on the jump, and required that the driver should hold him in with more than usual force, and that, while the driver was so doing, the bit broke, and that then the horse was under no control whatever.
The question in the case as to the negligence of the defendant should also have been passed upon by the jury, and they should have decided:
First. Whether the bits were defective.
SecondWhether the defendant used reasonable care to discover if they were safe. The defendant owed the deceased a duty to furnish him proper appliances, and such duty could not be evaded by a delegation thereof to another. Bushby v. The New York, Lake Erie and Western R. R. Co., 107 N. Y., 374; Benzing v. Steinway, 101 id., 547.
There was direct testimony in the case that the bits were defective. Thomas Connorton testified: “I had noticed about the bit, you could tell by the bit, that it would not take much to break it without; if you gave it a sudden jerk it would come in two; but you would not notice it if you would not give it; take it in your hand and look it over properly.” Mr. Tooker says as to the appearance of the bits after the runaway: “It was all decayed and gone—rusted; that is where it was connected; you know it was all gone.” William H. Carleton testified:
Q. What was the condition of the bit where it was broken? A. Very rusty and seemed to be eat away with rust.
The bits were produced on the trial of the action for the inspection of the jury, and, also, on the argument of this appeal. Whether the bits were defective and whether such fact could or should have been discovered by the exercise of reasonable care on the part of the defendant were questions of fact. The defendant, as stated before, could not delegate to another the duty he owed the deceased. And if the proprietor of the stable was careless in not discovering the defect in the bits, and in not notifying the defendant, such facts would not relieve the defendant from the liability which the law imposes on the master.
The question of contributory negligence was one of fact. The deceased had never used the harness before, and the horse was harnessed in a stall and we do not think as a matter of law, that Brown was called upon under the circumstances to examine for defects in the harness. That would be a question of fact. Whether the deceased was *758 negligent in jumping from the wagon was, under the authorities, also, a question of fact. Dyer v. The Erie Railway Company, 71 N. Y., 228; Coulter v. The American Merchants Union Express Company, 56 id., 585.
In deciding this case, we do not intend to express any opinion as to the credit to be given to the testimony. We hold that there was evidence which required the submission of the case to the jury.
The judgment must be reversed and a new trial granted, costs to abide the event.
Osborne, J., concurs.