EMILY FORD, as Administratrix, etc., Respondent, *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY, Appellant.

*Court of Appeals, November 26, 1889.*

Affirming 17 N. Y. St. Rep. 393.

*Master and Servant.*—The master is not responsible to an employee for the carelessness of competent co-employees.

Appeal from the general term of the superior court of Buffalo, affirming judgment in favor of plaintiff on exceptions sent there in the first instance.

*James Fraser Gluck*, for appellant.

*Tracy C. Becker*, for respondent.

EARL, J.—This action was brought by the plaintiff to recover damages for the negligent killing by the defendant of her intestate, a switchman in its employ. In her complaint she bases her charge of negligence mainly upon the following grounds : the running of an unsafe and unsuitable car; the careless and negligent loading of the car without fastening the timbers securely thereon; failure to properly inspect

the car by proper and competent inspectors, and failure to provide proper and suitable rules for the government, control and instruction of its employees. The material facts as they appeared upon the trial are as follows: On the 29th day of May, 1887, the Buffalo Car Manufacturing Company sent to the defendant's docks on the Hamburg canal nine cars to be loaded with heavy timber and car sills taken from canal boats. The cars are what are known as gondola cars, generally used for carrying coal, and had boxes from eighteen to twenty-four inches high. They were not regular lumber cars, but were very much used upon all the roads running in and out of Buffalo for carrying lumber. Regular lumber cars are flat cars with iron brackets on the inner sides into which are placed stakes for the purpose of holding the lumber in place.

These cars had no brackets on the sides for stakes and there was nothing but the boxes to hold the lumber. On some of the cars the ends of the boxes dropped down, and on others they were, like the sides, fixed and stationary. The lumber was placed inside these boxes, and where the timbers were longer than the cars and the ends dropped down it was loaded flat, and on the cars where the ends of the boxes were fixed and stationary one end of the timber was laid down on the bottom of the car and the other end projected over the end of the box in cases where the timber was longer than the box. The lumber was piled after it reached the top of the box so that one piece overlapped another, the pile thus constantly growing narrower towards the top. On some of the cars the lumber was piled a foot and a half higher than the boxes. The car from which the lumber fell upon the intestate was one upon which the ends of the boxes were fixed and stationary and the timbers projected over one end. Thin strips of board had been nailed to the sides of the box, as it is claimed by the plaintiff, to hold the timbers on the car; but as claimed by the defendant and proved upon the trial they were simply guides in

462 FORD *v.* LAKE SHORE & MICH. S. R'Y CO.

Opinion of the Court, by EARL, J.

piling the lumber and were placed there for the purpose ; and the lapping of the timber one piece upon another, receding from the sides, was relied upon to keep the pieces in place. The nine cars were loaded by the employees of the defendant in charge of and under the direction of a foreman of great experience who had been engaged in loading and handling cars for eight or nine years. This lumber was to be drawn about a mile, simply from one part of the city to another. The cars, all loaded in the same way at the same time, all went safely except the one from which the lumber fell upon the plaintiff's intestate. After the cars were loaded they were carefully inspected by two foremen, and they considered them safely and properly loaded. Gondola cars like the ones in question were very generally used for the transportation of lumber for short distances, and these cars were loaded as such cars usually were for that purpose. The court charged the jury that there was no evidence that the defendant was called upon to establish any system of rules which should provide for any different or safer method in the loading of the lumber than the method described by the witness Davis, defendant's foreman, as in use by it. We think that charge was correct, but whether it was or not the plaintiff is not in a position to complain of it, and the question of suitable rules is therefore out of the case.

There is no question upon the evidence that the two foremen, who inspected and superintended the loading of these cars, were perfectly competent men, and therefore it cannot be said that the defendant failed to provide competent and proper inspectors. The only ground of negligence, therefore, remaining to be considered is whether the defendant furnished suitable cars and appliances. There can be no question that this was a suitable car. It did not break. It was strong and capable of holding timbers, and such cars were generally used for that purpose. It is entirely plain that the sole cause of the accident was the negligent and improper loading. The defendants having furnished the

cars, the employees should have placed the timbers on those cars which had movable ends to the boxes, so that the timbers could be laid down flat; and when they placed the long timbers in the particular car from which the accident came, they should not have piled them up so high as to make the pile dangerous. There was no emergency or necessity for putting a high pile of timbers upon any one car to be drawn the short distance. But if the employees desired to put a high pile of lumber upon any one of these cars, it is undisputed that suitable stakes have been furnished by the defendant to put inside the boxes where they could have been properly fastened and thus have held the lumber as securely as if piled upon platform cars with iron brackets upon the sides and stakes placed therein. It is too obvious for dispute that the sole cause of this accident was the improper loading of the car, and that if the employees of the defendant had properly loaded it, and made proper use of the stakes and materials the company had furnished, the accident would not have happened. These employees were the co-employees of the intestate, and for their carelessness the defendant is not responsible. In the case of Bushby *v.* The New York, Lake Erie & Western R. R. Co., 107 N. Y. 374; 12 N. Y. State Rep. 9, the plaintiff, a brakeman on a car loaded with lumber, was thrown off from the car because an imperfect stake broke, while the car was in motion, and he was thus injured; and it was held that the defendant was liable on the ground that it had not furnished any stakes for holding the lumber in place after it was put upon the car. The main features of that case are, therefore, unlike those which exist here.

This case bears some resemblance to the case of Byrnes *v.* The New York, Lake Erie & Western R. R. Co., 113 N. Y. 251; 22 N. Y. State Rep. 936, where a brakeman upon a lumber car was injured because it was improperly loaded; and it was held that the defendant having provided a safe car and a safe system and competent men to inspect it, was

not responsible for the negligence of co-employees in the performance of their work.

We are, therefore, of opinion that upon the defendant's motion the court should have directed a verdict in its favor and the judgment should, therefore, be reversed and a new trial granted, costs to abide event.

DANFORTH, J. (dissenting).—At the close of the evidence the defendant's counsel asked the court to direct a verdict upon the grounds:

" *First.* There is no evidence whatever of the defendant's negligence.

" *Second.* On the ground of the plaintiff's contributory negligence.

" *Third.* That even assuming that the duty in this case was one to be performed by the master, there is no evidence that, under the circumstances in this case, the ordinary care required of the master had not been exercised on this occasion."

At the close of the case numerous exceptions were taken to the charge as made, and to the refusal of the learned judge to charge as requested by the defendant's counsel. The plaintiff had a verdict, and the exceptions were ordered to be heard at the general term in the first instance. They were there overruled. The opinion then rendered seems to me abundantly sufficient to sustain that result, and I am unable to find in the argument submitted to us in the interest of the railroad company any reasons sufficient in law for the reversal of the judgment which the supreme court ordered.

The first point made by the appellant is that the trial court erred in refusing to direct a verdict for the defendant. The plaintiff's intestate was a switchman. While performing his duties as such, several sticks of timber from twenty-six to thirty feet in length and from five to twelve inches thick, part of the load of a passing car, fell from it and

upon him, crushing him so that he died. This car was for all legal purposes the car of the defendant, employed by it in its business, and for its management the defendant is to some extent responsible. The law casts upon it a certain duty, and it is for the interest and safety of the community that the defendant be held to its performance. Was there evidence of negligence on its part? It was held in Bushby *v.* The R. R. Co., 107 N. Y. 374; 12 N. Y. State Rep. 9, not by way of formulating any new rule, but by application of a very old one, that it was the duty of the company as master to fit or prepare its car for the use for which it was designed. There the company had furnished a platform car without stakes or sides, and through the imperfection of the stakes finally provided its servant's death was caused, and for that the defendant was required to make compensation. The same rule applies here. It was within the province of the master to furnish a suitable car for the carriage of lumber, and the proposition may be more specific, it was the duty of the master to furnish a car suitable for the carriage or transportation of that particular load of lumber. The concession of the defendant is that the " car was not what is known as a regular lumber car." It was in fact a gondola or coal car. It is also a statement of the defendant that " a regular lumber car is a flat car, having brackets upon its sides into which stakes from three to six inches thick are driven, and inside of those the lumber is laid." It is, of course, obvious that the height of the stake or other protection is an important consideration, and must govern the height of the load. The car in question also had brackets on the side, but they were not empty, nor were they designed for stakes. They were to receive the post or bar of the box frame, which was from eighteen inches to two feet high. Above that, of course, the sides of the car furnished no protection.

It appeared, however, that this frame went round the car, at the end as well as at the sides, and that owing to the

30

greater length of the timber one end of some of the pieces was necessarily put in the car and the other projected over the end of the car slanting. It also appears that the load was higher then the sides of the car, and was not staked. It could not be staked because no brackets were provided, and the only way the timber was secured from outward force was by nailing some sticks on the inside of the car box, neither fastening them to each other nor overhead. They were not intended as protection, but as guides, and the defendant's foreman testified that the security relied upon was from the different widths of the timber, and so "one piece overlapping the other." We have then a case precisely within the principle of the Bushby case, *supra.* Here the car above the sides of the box was unprotected, and no means of protection afforded; no brackets within which stakes could be placed; but more than that the car was an unusual one for the purpose to which it was applied, and for which the company furnished it. If it was so managed as to give equivalent security to the employee, it was for the jury to find that out. From the face of the record it might appear that the dangerous machine was sent upon the track without a thought or care for the safety of those whose duty as employees might bring them to it, or of the traveler whose journey would lead him near its course. The trouble was not in the manner of loading, but in the construction of the car, which made any other manner impossible. As the load rose above the box, every timber had at once leaned towards the ground, and by its own gravity gave effect to each jar or concussion.

It was not from the omission of stakes, but from the absence of brackets to receive them. The defect was structural and the omission corporate. It is enough for us to say that if there was any question, it was one for the jury, and that the court committed no error in refusing to take it from them.

As to the exceptions to the judge's charge : (1) It was

not necessary for the court to say that any of the defendant's servants " were competent for the work assigned to them." It was enough to say, as the judge is conceded to have said, that there was " no evidence that they were not competent." I am unable to discover any ground upon which the defendant could justly call for an affirmative opinion or declaration from the court. (2) The learned counsel for the defendant asked the judge to charge, " If the jury believe that these cars were carefully inspected, before they started and prior to the accident, by competent inspectors, and the method in which they were loaded and secured, the load was by them adjudged to be a safe and proper one, then the defendant cannot be held guilty of negligence," and he declined to charge differently than he had already charged. The court had properly referred to the grounds on which the defendant's liability defended, and was not bound to accept the measure proposed by counsel. It omitted elements of the greatest importance, and, if adopted, would have tended to exclude from the consideration of the jury the corporate negligence of the defendant in omitting, among other things, to furnish proper cars, and would have turned their attention from the master's acts to those of his servants.

(3) The next point involves a like defective proposition. The defendant asked the learned trial judge to charge the jury, " If the defendant furnished suitable appliances for the loading and unloading of lumber, and employed competent and proper persons to load the cars, and the injury resulted from the neglect or failure of persons so employed to use such appliances or properly load the car, then the plaintiff cannot recover," and the court responded in the same manner. The proposition is confined to the loading and unloading of the car either by appliance or laborers, and excluded entirely the construction of the car and its capacity to receive loads of this nature. Every fact suggested by the defendant's proposition might be true, and yet the

plaintiff recover, because the defendant had not furnished "a safe, suitable and proper car" for such a load, or the application and use of such appliances and workmen. A trial judge must be left to the exercise of some discretion as to the considerations suggested by the evidence and the language in which he will communicate them to the jury. He cannot be called upon to turn the case one way or the other upon isolated points of inquiry, and he fails in no duty when he submits in a fair and impartial manner the whole matter in controversy to the jury as the constitutional and final judge of the facts. This was done in the case before us. I think the general term properly disposed of the exceptions.

The judgment appealed from should, therefore, be affirmed.

Judgment reversed, and new trial granted, costs to abide event.

FINCH, PECKHAM and GRAY, JJ. concur; DANFORTH, J. reads for affirmance; RUGER, Ch. J. and ANDREWS, J. concur.