### HOGAN *v.* SMITH *et al.*

(*Supreme Court, General Term, First Department.* May 9, 1890.)

**1. NEGLIGENCE—EVIDENCE—PROVINCE OF JURY.**

Plaintiff's husband was killed while lading flour in bags upon defendants' vessel. The men were working upon a "stool" formed by bags, and intestate was struck with one of the slings of flour, and knocked from the stool into the lower hold of the vessel, through the deck, in which the hatchway had been left open, receiving injuries from which he died. From the place at which deceased was working he was not able to see the open hatchway behind him, which was not lighted, and could have been discovered only by accident or special effort. The question whether it was customary to cover the space was submitted to the jury, and also whether the working place was reasonably safe, with instructions that, if they found that it was reasonably safe, defendants were entitled to a verdict. The jury were instructed that if deceased assisted in the construction of the the stool, or saw that the space was open, and continued voluntarily in the employment, there could be no recovery. *Held,* that the case was fairly submitted to the jury, and their verdict for plaintiff would not be disturbed.

**2. SAME—INSTRUCTIONS.**

An instruction requested by defendant, that if intestate was unable to see the open space into which he fell he was guilty of contributory negligence in undertaking to work in such a position, was properly refused.

Appeal from circuit court, New York county.

Action by Kate Hogan against Allen C. Smith and others to recover $5,000 damages for the death of plaintiff's intestate, her husband, occasioned by the negligence of defendants. Plaintiff's intestate, who was a longshore-man, was employed by defendants in helping to store a cargo of flour on the ship Devonia, on June 6, 1881, at pier 21 North river. It appeared by the evidence that the deceased was working on what is called the "orlop deck" or the lowest deck of the vessel. There are two decks above this deck. The orlop deck is an open deck, consisting of iron beams running across the vessel from side to side, and with no planking or floor covering the beams. The hatchway, which opens on the main deck, continues down to the orlop deck, where there is also an opening called the "square of the hatch." Across a portion of the square of the hatch on the orlop deck there was built a "stool," upon which the men stood to receive the flour as it was lowered down into the vessel. This stool is made of bags of flour piled upon one another, upon temporary planks laid across the beams, and upon the square of the hatch. These bags of flour are placed so as to make the "stool" about $3\frac{1}{2}$ feet high, and covering a space about the size of a jury-box. The planking was also laid upon the orlop deck of beams that the men who stow away the flour could walk up to the stool, and, taking a bag of flour on their backs, could carry it off to the place where it was to be stowed. It appeared that it was customary to build or lay the temporary planking beyond the space where the men were working. In this instance, however, the planking did not continue behind the stool where the deceased was working, but there was an open space left. Defendants' witness admits that they neglected to cover over this open space. The top of the stool was about three feet from the lowest covered deck, so that the heads of the men working on the stool extended above the hatch of the covered deck, and a person working on this stool could only see the open space behind the stool by stooping. The deceased was in the act of making up a sling, stationed on the stool near the open space, with his back to the open space, and his face to the opposite side. He was struck by a draft or sling of flour and fell backward into the space left uncovered, and thus down into the hold, a distance of about 12 feet, upon a mass made up of pieces of iron about three feet long, and weighing about five hundred pounds, and received inju-

ries which resulted in his death. The deceased was one of the last men coming down upon the lower deck, because the last men are generally put to work on the stool. He had to pass through two decks in order to reach the one in question, and, coming from the daylight, he would not have been able to see the open space behind him, which was not lighted. It further appeared that the slings of flour "came down as quickly as chain lightning," and that a person working there had to keep his eyes up towards the light all the time, or he would be lost. It appeared by the evidence that the deceased and other longshore-men were only employed by the hour, and, although the stool in question was built by certain longshore-men, it did not appear which particular longshore-men built it. The deceased was not employed as longshoreman when the stool was built; he came there after the stool had been built, and he did not know the danger he was in. Upon the first trial of this action the circuit judge dismissed the complaint, and, upon an appeal taken by the plaintiff from the judgment entered upon such dismissal, the general term of this court, at the March term, 1886, reversed the judgment, and ordered a new trial on the following opinion:

"DANIELS, J. The intestate was killed while he was employed on the ship Devonia, in assisting in lading flour in bags upon the vessel. What was called a stool was constructed by the men, upon which they worked in taking in the flour. This was formed by bags upon which the men stood to hoist the flour. The intestate was struck on the head with one of the drafts, or slings, of flour, and knocked from the stool into the lower hold of the vessel, through the deck in which the hatchway had been left open. He fell about 15 feet, striking upon steel blooms, and receiving an injury which in a few days afterwards resulted in his death. The open hatchway was not directly observable from the place where the intestate was required to perform his services, and there is no evidence in the case indicating that he knew that to be its condition. The stool upon which he was working was formed by the men themselves, and planks were supplied which might have been used by himself and the others working with him if they had known their danger, so as to have formed a protection against the risk of such an accident. But as the stool had been made there appears to have been nothing to prevent a person who fell from it from falling into the hold of the vessel. Upon the trial the complaint seems to have been dismissed upon two grounds,—the alleged negligence of the intestate and his fellow-servants; and that the defendants were not shown to be in any manner responsible for the action. That the intestate was himself chargeable with negligence was not so proven by the evidence as to permit the court to withdraw that inquiry from the consideration of the jury. *Power* v. *Railroad Co.*, 32 Hun, 415. Neither can he be held to have taken upon himself his exposure to this risk as one of those attendant upon his employment. The case upon this subject is clearly distinguishable from *Kennedy* v. *Railway Co.*, 33 Hun, 457, where all the risks of the employment were open to observation. In this instance that was not the fact, for the open hatchway below the place where the intestate was rendering his services was not within his immediate view, and could only have been discovered by a special effort made for that purpose. Neither was the accident so attributable to the negligence of the men themselves, in not providing for their protection by the use of the planking, as to excuse the defendants as the owners of the steamer from liability; for it has been held to be the duty of the employer himself to provide for the employe 'a safe and proper place in which to prosecute his work.' *Pantzar* v. *Mining Co.*, 99 N. Y. 368, 2 N. E. Rep. 24. That duty rests upon the employer, and if its observance is intrusted to others in his employment, and they fail to discharge it, and in consequence of that failure an injury results to another person in the service of the employer, the latter will be liable for their neglect of the performance of a duty which the law imposes upon the employer himself. The hatch

through the deck was not in use. There was no requirement for keeping it open, and in that manner exposing the intestate to the chance of the injury received by him. A reasonably safe and proper place for the prosecution of his work and the rendition of his services was not supplied by the employer with the hatch left in this condition. It was the defendants' duty, in the exercise of reasonable care and diligence, to secure the closing of the hatch before the intestate was assigned to this dangerous position, for the rendition of his services. That duty they failed to perform, and, under the legal principle which has so often been announced by the courts, they were careless in the observance of the obligations incurred upon their part to this person in their employment. At least, the evidence was sufficient to require that this as well as the other point in the case should be submitted to the jury. The proof upon the trial was not very clearly given, but, upon the best construction and understanding afforded by it, the plaintiff was entitled to have her case passed upon by the jury. The judgment should be reversed, and a new trial ordered, with costs to abide the event."

Defendants' motion for a reargument was denied, the opinion being as follows:

"DANIELS, J. The facts attending the accident by which the intestate lost his life were not clearly made to appear by the evidence on the trial. But sufficient was made to appear to require the case to be submitted to the jury, even though the court was under a misapprehension as to the fact that the intestate fell through a hatchway in the lower deck; for whether it was an open hatchway or a space between the timbers of the vessel creating a dangerous opening into the lower hold was of no essential importance in the disposition of the action. The important fact was that this opening existed, rendering the persons at work upon the stool liable to serious injury or the loss of life by falling from it through this opening into the hold of the vessel. There was no misapprehension whatever as to its existence or locality, or as to the danger to which it subjected the persons who were at work upon the stool. And whether it be designated as a mere open space between the timbers or an open hatchway is of no essential importance in the disposition of the case. The evidence upon the subject was, as has already been said, obscure, but a further and additional perusal of it warrants the statement that the opening was not an open hatchway, but was a space between the timbers of the vessel which had not been covered before the intestate entered upon the rendition of his services. It was about three and a half feet below the place which he was required to occupy in the performance of his services, and still below it was the hold of the vessel, into which a person could not be precipitated through the hole without the risk of great bodily injury or loss of his life. In the business in which the intestate was employed, the evidence tended to establish the fact that it was the practice to cover spaces of this description in the lower part of the vessel, and the intestate when he engaged in this employment may have assumed that he would be exposed to no risk of the character of that resulting in the loss of his life by reason of an omission on the part of the employer to cover this opening. It was a place of danger to the persons who were engaged in the taking in the flour upon the stool, and it has been stated to be the law that ' the rule is unqualified that a master is bound to use all reasonable care, diligence, and caution in providing for the safety of those in his employ,' etc. *Benzing* v. *Steinway*, 101 N. Y. 547, 552, 5 N. E. Rep. 449. And as the evidence was given concerning these facts, the point of the defendants' negligence was one for the consideration of the jury. It could not be inferred, as it was by the court in the case of *Powers* v. *Railroad Co.*, 98 N. Y. 275, that the intestate was in fault for pursuing his employment as he did in the vicinity of this dangerous opening; for it was not made to appear, as it was in that case, that he was aware of the existence of the danger. The hold of the vessel was shown to have been dark, and this

opening could not be discovered without an effort made to obtain a knowledge of its existence.   Whether the intestate was in fault for not having endeavored to make the discovery or not would be a question for the jury, and not for the court, to determine.   As the case was presented within the law as it has been so recently stated, it was one for the jury, and not for the determination of the court.   The motion for reargument should therefore be denied, with costs."

The jury returned a verdict for plaintiff for $1,500, and from the judgment entered thereon defendants appeal.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Jas. A. Shoudy*, for appellant.   *Samuel Greenbaum*, for respondent.

BRADY, J.   The views entertained by the general term were that the intestate himself was not so proven to have been chargeable with negligence as to permit the court to withdraw that inquiry from the consideration of the jury, nor to have taken upon himself his exposure to this risk as one of those attendant upon his employment.   The case as then presented was considered, therefore, to be clearly distinguishable from *Kennedy* v. *Railway Co.*, 33 Hun, 457, where all the risks of the employment were open to observation. The open hatchway below, where the intestate herein was proved to have been working, was not within his immediate view, and could be discovered only by accident or special effort.   The second trial was conducted with reference to these principles, modified in some respects, it may be, by the charge of the learned judge presiding.   The defense consisted of different elements, one of which was that the defendants were under no obligation to see that the space mentioned in the statement of fact was covered; that this was the usual way in which the decks were prepared for such work as was to be done; and that the deceased was guilty of negligence, and could not recover.   These subjects were fairly and distinctly discussed in the charge, and the defendants accorded, by the rules declared, all that they were entitled to.   The learned justice said that it was the duty of the defendants, as had been previously decided by the general term, to provide a reasonably safe place upon which the deceased could work, from which the defendants could not be relieved unless the deceased himself was one of the persons who constructed the stool upon which he was standing, when he would probably be guilty of negligence in regard to its construction.   He then discussed the evidence on the subject, showing that the space through which the deceased fell was not covered, although it was customary to cover it; and he made the suggestion then, which was proper, that the deceased had a right when he went there to suppose that it was covered.   The question whether it was customary or not to cover the space as indicated was submitted to the jury, and also whether it was made reasonably safe as a working place, with instructions that, if they found that it was reasonably safe, the defendants were entitled to a verdict, and if it was not safe, then it would be the duty of the jury to consider whether the defendants were guilty of negligence in regard to the accident.

The important question suggested by the defendants' counsel, as to whether the deceased assisted in the construction of the stool, was also submitted to the jury, and they were instructed that, if he did, plaintiff could not recover.   The defendants further claim that the deceased took the risk of the danger of his employment.   Upon that subject the general term had expressed its opinion, as we have stated; and the learned judge said in his charge that, even though the deceased had not anything to do with the construction of the stool, if when he began his employment he saw that the space was open, and continued voluntarily in the employment, he undoubtedly took the risk of that danger, and the plaintiff could not recover; and if he did not know it, then the question would arise whether, under all the circumstances, he ought to have known it. It thus appears that the case was fairly and fully submitted to the jury upon

the various questions necessarily involved, and, as already stated, with such proper instructions as was necessary. Defendants' counsel, however, requested the court to instruct the jury that if the deceased was unable to see the open space into which he fell, he was guilty of contributory negligence in undertaking to work in such a position. It may be said that this proposition must be attributed to exaggerated zeal. It cannot be entertained for a moment. The defendants' counsel also excepted to the instruction that it was the duty of the defendants to provide a reasonably safe place upon which the deceased could work. As we have already seen, that view of the law was declared by the general term, and the exception is of no value. The defendants' counsel excepts to so much of the charge as stated that it was no defense that any other longshore-men were guilty of negligence in the construction of the platform or otherwise. This exception is of no value, for the reason that it omits the qualification made by the learned judge by adding, "unless it can be shown that they were fellow-servants at the time of the construction." The defendants' counsel excepted to the qualification, and to the charge as given. Defendants' counsel also excepted to so much of the charge as states, in substance, that if the deceased took no part in the construction of the platform or stool, that then he could not be guilty of negligence in its construction, or chargeable with the negligence of any of the servants of the defendants; also that he could not be guilty of negligence in such construction, or chargeable with the negligence of any of the servants of the defendants, if he entered the employment after the platform was constructed. From the statements herein made of the chief features of the charge, it will at once suggest itself that these instructions as to the construction of the stool were not left unqualified for the consideration of the jury, for it was stated to them that if the deceased knew of the open space, or if under all the circumstances he was guilty of a want of reasonable care in not discovering the open space, or was chargeable with notice thereof, the plaintiff could not recover.

The learned counsel for the defendants has labored assiduously to bring the facts of this case within the adjudications to which he refers, declaratory of principles which, if applied, would absolve his clients; notably the cases of *Stringham* v. *Hilton,* 111 N. Y. 188, 18 N. E. Rep. 870; *Webber* v. *Piper,* 109 N. Y. 496, 17 N. E. Rep. 216; *Hussey* v. *Coger,* 112 N. Y. 614, 20 N. E. Rep. 556; *Byrnes* v. *Railroad Co.,* 113 N. Y. 251, 21 N. E. Rep. 50,—the doctrines of which cases are that "the master is not an insurer that all his servants shall perform their duty, and he performs his duty to the servant in this regard in providing a system of inspection, and in trusting its performance to competent hands. If, thereafter, such servants are guilty of negligence, the master is not responsible therefor to a co-servant." And, further, that "it would be extending the liability of the master beyond any established rule to require him to oversee and supervise the executive detail of mechanical work carried on under his employment, and there is no rule of law which authorizes it. The risks arising to employes from the negligence and carelessness of fellow-workmen are incident to the service in all mechanical employments, and must be borne by the servant, and even with this limitation the field of the master's liability is sufficiently broad to impose upon him most onerous obligations in the conduct of industrial enterprises." These cases, however, recognize the proposition that an employer must perform the duties which the law enjoins upon him before he becomes exempt from liability for injuries sustained in the ordinary and usual mode of prosecuting the work in hand. Here the question whether the defendants had discharged their duty was one which, under the evidence, was submitted to the jury. There was a question whether the stool was constructed in the ordinary mode, evidence having been given by one longshore-man that the space left uncovered it was usual to cover, the place itself in which the men were called upon to work being *per se* unsafe, and so much so as to cast upon the employer the burden of great vigilance. It must

be said, also, that in this case it did not appear conclusively that the rule of law could be applied which exempts employers from liability who had employed competent and skillful persons to make the necessary arrangements to carry on the work in contemplation. It is a fair inference that, the space having been improperly left open, it must be regarded as having been found by the jury as evidence of their incompetency. The error in the attitude of defendants' counsel arises from his assumption, apparently, that whether the employer has provided a safe and proper place for the workmen or not, occasions no liability if he has employed competent men to do the work, provided the person injured has participated in the construction of any apparatus for the purpose of prosecuting the work, or have used it. These propositions go on *pari passu* together. This view, as we have seen, is erroneous. On the subject of the master's liability in the respect suggested, see, also, *Benzing* v. *Steinway*, 101 N. Y. 552, 5 N. E. Rep. 449; *Bushby* v. *Railroad Co.*, 107 N. Y. 379, 14 N. E. Rep. 407; *Cullen* v. *Norton*, 4 N. Y. Supp. 774; and *Tendrup* v. *Stephenson*, 3 N. Y. Supp. 882; and the general term opinion in this case. The preservation of the rule imposing the obligation of providing safe places for the workmen may be regarded as a sacred duty by the courts, and should prevail in every case where it can be applied. Indeed, it would seem to be just to require the employer, in all cases of dangerous employment, to prove that the person working was advised of the fact, and thus took upon himself the responsibility of safety. It is not intended, however, to apply such a rule in this case, but the seemingly reckless disregard of human safety making the business elements of life, and which require workmanship in dangerous places and under circumstances of great peril, calls for the intervention of more exacting obligations, with a view to better results in all respects. In this case we see no reason, however, why the judgment should be interfered with, and it should therefore be affirmed.

VAN BRUNT, P. J., and DANIELS, J., concur in the result.