CARRIE SUTTER, as Administratrix, etc., of GEORGE F. SUTTER, Deceased, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Negligence — collision between two railroad trains — the negligence in crossing over from one track to another held to be that of a co-servant — a failure to equip an engine with a chimney for the headlight, held to be the neglect of the railroad company — reliance upon a semaphore.*

In an action brought against a railroad company to recover damages resulting from the death of the plaintiff's intestate, it appeared that one Burns, an engineer in the defendant's employ, was directed to take a freight train from Rochester to Buffalo on track No. 3; that the headlight of the engine furnished to Burns was not equipped with a chimney, and that in consequence thereof the headlight could not be used; that Burns applied for a chimney at the defendant's store in Rochester, but being unable to secure one, proceeded on his journey; that he might have obtained a chimney at Batavia, but neglected to do so.

The train arrived at Depew about eight o'clock in the evening, when it was dark and cold and the wind and sleet were blowing strongly. Orders were there received that the train should cross over from the west-bound freight track to the east-bound freight track in order to give a clear track to a freight train which was following it. The switchtender threw the switch for this purpose immediately upon the arrival of the train, and after a delay of twenty minutes the conductor gave the signal to cross over to the east-bound track and notified a brakeman to go ahead and protect the train from the front. The brakeman ran along by the side of the engine for some distance and as he did not get ahead of it jumped on the cowcatcher, rode a short distance, then stepped off and succeeded in getting about eight car lengths ahead of the train when an east-bound freight train hove in sight. He signaled the east-bound train to stop, but it was unable to do so and a collision resulted, in which the

plaintiff's intestate, who was employed as a conductor upon the east-bound train, was killed.

There was a semaphore located about 3,000 feet west of the crossover which was operated from the switch shanty and which, by its light, would indicate to an engineer whether the track was clear. On the night in question this semaphore was so clogged with ice and snow that it was impossible to operate it. A rule of the defendant's road required those in charge of a freight train to protect it in front whenever necessary by sending ahead a brakeman and placing torpedoes upon the track.

*Held*, that it was improper for the court to submit to the jury as a question of fact the question whether the persons in charge of the west-bound train were chargeable with negligence because of the manner in which they attempted to make the crossover;

That the evidence established, as matter of law, that they were guilty of negligence in this respect and that such negligence was that of the intestate's coservants and not that of the defendant;

That the crew of the west-bound train were not justified in relying upon the semaphore even though it had been in successful operation;

That the duty of seeing that the engine of the west-bound train was equipped with a chimney for its headlight when it started upon its journey rested upon the defendant, and that, if it delegated that duty to Burns, the latter was, to this extent, the *alter ego* of the defendant and not a fellow-servant of the intestate;

That, consequently, the failure of Burns to procure a chimney for the headlight at Batavia was a failure of the defendant;

That, if the jury found that the absence of a chimney for the headlight and the consequent absence of the headlight was a co-operating and influential cause of the collision, and that without such cause the collision would not have occurred, the defendant would be liable, notwithstanding the negligence of Burns and his crew in the management of the train at the crossing.

APPEAL by the defendant, The New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 28th day of April, 1902, upon the verdict of a jury for $7,000, and also from an order entered in said clerk's office on the 29th day of April, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Leroy B. Williams*, for the appellant.

*James E. Newell*, for the respondent.

SPRING, J.:

George F. Sutter, a conductor in the employ of the defendant on a freight train going east from Buffalo, was killed at Depew, N. Y.,

on the evening of November 24, 1900, in a collision with a west-bound freight train, and his representative brings this action to recover damages, charging that his death was due solely to the negligence of the defendant.

Sutter's train consisted of about eighty cars, and it left the East Buffalo yards of the defendant about six o'clock in the evening. The engine was running tender ahead, nosed into the caboose, with the freight cars drawn along in the rear. The train was made up temporarily in this way for convenience in shifting it in the yards, and there is some evidence tending to show that this was a common method in which cars were transposed in this yard. The only light on the tender was a small one called a marker, and the train was moving along at from five to eight miles an hour on track No. 4 at the time of the collision.

About three o'clock that morning Burns, an engineer in the employ of the defendant, received an order to make up a freight train in Rochester for De Witt, a station near Syracuse. In compliance with the direction he took out an engine, and a lamp explosion caused a fire in the cab, breaking the windows, cutting off the air and steam connections and doing other injuries. He returned the engine to the engine house for repairs. In the forenoon he was called up on the telephone from the office of the engine dispatcher of the defendant in Rochester, inquiring if his engine was fit to take a train to Buffalo, and he replied that it was, and he was thereupon directed to do so. He got out his engine and the air and steam connections had been adjusted, but it was without a chimney for the headlight and the windows in the cab were broken. Burns applied at the store of the company in Rochester for a chimney, but did not get it, and started with his train of upwards of sixty cars from East Rochester about twelve o'clock noon. He arrived at Batavia between three and four o'clock, and stopped his train a few minutes to take water. There was a store of the defendant at Batavia at which supplies were kept to be used on the trains, including chimneys for headlights, and Burns was aware of this, but claimed he forgot to obtain one, although he had an abundance of time in which to do so. At Looneyville, a station near Depew, the conductor received orders to store his cars, except a few containing merchandise, in the yards of the defendant at Depew if there was

room to do so.   The train arrived at the station at Depew about eight o'clock in the evening and it was then dark and cold and there was a strong wind accompanied by sleet.   Roach, who tended the switch and was also a telegraph operator at the junction, had already received orders to have the train pass over the crossover from track 3 on which it was running to track 4 to let pass a freight train which was following the Burns train.   The switchtender threw the switch for this crossover to be made when the train arrived.   The train crew stopped for about twenty minutes, the conductor in the meantime looking over the switch yard for a place to store the cars.   He then gave the signal to cross over and a brakeman was notified to go ahead and protect the train from the front.   It had already started ahead and the brakeman ran along by the side of the engine, but as he did not get ahead of it he jumped on the cowcatcher, rode a short distance, then stepped off and managed to get ahead about eight car lengths when for the first time, he saw Sutter's train close upon him and signaled for it to stop, which it was unable to do and the collision occurred.

There were two semaphores at the junction, one about 3,000 feet west of the crossover and the other to the east.   These were operated from the switch shanty and by their lights indicated to an engineer whether the track was clear.   The semaphore to the west the switchtender was unable to operate that night, and at times before it had become clogged with snow and ice and the company had been obliged to have it cleaned out upon being notified by the switchtender.   There was some proof to the effect that freight trains were wont to do switching upon these two tracks 3 and 4 at this point without further protection than the semaphore signals afforded.

The trial court permitted the jury to determine as a question of fact whether Burns, the engineer, and those in charge of the westbound train were chargeable with negligence in the manner in which they attempted to make this crossover.   In this, we think, he committed an error requiring the granting of a new trial in this action.   Rule 99 of the defendant's rules, which was then in vogue, required those in charge of a freight train to protect it in the front, whenever necessary, by sending ahead a brakeman and placing torpedoes upon the track.   Rule 100 reads as follows: " All opera-

tions. of switching trains, cars or engines, or of crossing from one track to another, must be performed only at such time and in such manner as to prevent the chance of accident, and strictly in accordance with the rules. Great caution must be used and good judgment is required to prevent detention to trains, and Rule 99 must be strictly observed."

These rules were not observed, and, independently of any rules, the duty was incumbent upon those in charge of the train on this dark night to use proper precaution to avoid a collision. They knew they were followed by a fast freight train; they had been delayed at the junction nearly one-half an hour; they knew that, when they crossed over to track 4, they were upon a track used by freight trains going east, and yet nothing was done to avoid a collision. This was especially incumbent upon the engineer and conductor, in view of the fact that the train was running without a headlight and that it was a stormy, bad night, and their failure to take such precautions as the defendant's rules required, or any precaution whatever, constituted negligence, and as such omission is the negligence of coservants, it is something for which the defendant is in no wise responsible.

Nor do we think that it is any extenuation of their conduct that the semaphores did not operate properly that night. This was an additional circumstance calling upon them to take extra precautions to guard their train. The rules pointed out expressly the course to be adopted, and did not justify the engineer or conductor in placing reliance upon the semaphores, even though they had been in successful operation.

Inasmuch, however, as a new trial is necessary, we deem it proper for the guidance of the trial court to dispose of certain other questions which will necessarily arise upon the retrial of the action. It is urged by the learned counsel for the defendant that Burns was negligent in failing to stop at Batavia and obtain a chimney for his headlight; that as he was a coservant with Sutter, and his negligence caused the collision, no recovery may, therefore, be had. We think this rule does not obtain. The engine was left by Burns in the morning in the repair shop of the defendant at Rochester to be repaired. The defendant permitted him to go on his trip with the engine, without any chimney for the headlight. The duty of start-

ing the train in the first instance with proper equipment was upon the defendant. This duty it could not delegate, and whoever was engaged in its performance was acting as the *alter ego* of the defendant. (*Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 374; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 id. 398; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 163 id. 391; *Bailey* v. *Rome, W. & O. R. R. Co.*, 139 id. 302; *Coppins* v. *N. Y. C. & H. R. R. R. Co.*, 122 id. 557.)

The burden was upon the defendant to inspect the engine, and if it intrusted the work to Burns, its engineer, he was engaged in performing the primary obligation which rested upon it as master, and which work must be performed before it was in a situation to invoke the rule that Burns and Sutter were co-employees. The fact that Burns was an engineer does not alter this principle. It is the character of the service performed, not the grade of the employee, which determines this question. (*Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 N. Y. 416.)

It follows logically that if this duty was incumbent upon the defendant to equip its train, the obligation continued until that equipment was made. It, therefore, is not relieved from this duty even if it supplied a chimney at Batavia, and which Burns neglected to obtain. The omission of Burns to obtain the needed equipment at Batavia was still the omission of the defendant. We think, therefore, the court was in error in permitting the jury to pass upon the question whether Burns was negligent in omitting, while at Batavia, to procure the chimney for his engine. If this was a question solely between Burns and the defendant, it might be said that the furnishing of the chimney was a mere detail of the work, and that the defendant was relieved by the failure of Burns to procure it at Batavia. We must, however, bear in mind that thousands of men in the defendant's service were co-employees of Burns. If any one of these received injuries by reason of the negligence of this engineer no recovery may be had because it was the negligence of the co-employee, although the person injured was blameless. It is, accordingly, in view of the far-reaching effects of this principle, important to hold the defendant to a fairly strict accountability in equipping its train properly and safely before sending it out on its round. As was said in *Bushby* v. *N. Y., L. E. & W. R. R. Co. supra*, at p. 381):

"The duty, therefore, was upon the master to fit or prepare the car for the use to which it was consigned, and no encouragement should b'e given to an omission to perform that duty, or to negligence or failure in any degree in respect to it.   On the contrary, a just public policy as well as that of the statute, requires a court to hold a railroad company to a strict observance of its obligation."

The rule that where an employee is injured through the fault of a fellow-workman, the common employer is not liable to respond in damages, is, therefore, for the benefit of the latter, and depends upon the performance of the full measure of duty by such employer. If the negligence consist in doing or failing to do some duty with which the master is chargeable, and has intrusted to the employee, the rule adverted to does not exist, for the servant is in the stead of the master.   This case illustrates these familiar principles.   The omission to supply the proper headlight at Rochester was imputable to the defendant.   Its obligation to Sutter was not met until the defect was repaired.   Consequently the failure of Burns to procure the chimney at Batavia was still the failure of the defendant, for the engineer with reference to that appliance was the representative of the defendant, not its servant.   (*Benzing* v. *Steinway & Sons,* 101 N. Y. 547; *Eastland* v. *Clarke,* 165 id. 420, 428; *Knisley* v. *Pratt,* 148 id. 372, 378.)

In the *Benzing* case, in discussing this proposition, the court say (at p. 552):  "The master is chargeable ordinarily with knowledge of the means necessary to be employed in performing his work, and when their procurement and selection is* delegated to a servant he stands in the place of the master in discharging those duties; and the servant's neglect in that office is chargeable to the employer as an omission of duty enjoined upon him.   *   *   *

"Ignorance by the master of defects in the instrumentalities used by his servants, in performing his work, is no defense to an action by the employe who has been injured by them, when by the exercise of proper care and inspection the master could have discovered and remedied the defects, or avoided the danger incident therefrom."

We reach the conclusion, therefore, that the absence of the chimney and the consequent absence of the headlight were the fault of the defendant, and the jury may possibly find that the absence of

---

* *Sic.*

the headlight was a co-operating and influential cause of the collision, without which it would not have occurred, and the defendant would then be liable notwithstanding the negligence of Burns and his crew in the management of the train at the crossing. (*String-ham* v. *Stewart*, 100 N. Y. 516 ; *Wood* v. *N. Y. C. & H. R. R. R. Co.*, 32 App. Div. 606 ; *Crispin* v. *Babbitt*, 81 N. Y. 516 ; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 163 id. 391.)

The learned counsel for the appellant cites *McDonald* v. *N. Y. C. & H. R. R. R. Co.* (63 Hun, 587). That case is not pertinent because there when the engine left the yards of the defendant it had been duly inspected and the defect occurred *en route*, and therein lies the distinction. Had the engine been properly equipped with the chimney at Rochester and that appliance broken between that place and Batavia or Depew, the rule contended for by the defendant would be applicable.

Without entering into a discussion of the subject, we are satisfied that the question of Sutter's management of his train was properly submitted to the jury as one of fact.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

ADAMS, P. J., and MCLENNAN, J., concurred ; WILLIAMS and HISCOCK, JJ., concurred in result.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event, upon questions of law only, the facts having been examined and no error found therein.