MICHAEL O'KEEFE, Appellant, v. GREAT NORTHERN ELEVATOR COMPANY, Respondent.

*Negligence — injury to an employee in consequence of a hook being pulled from the flange on which it hung — proof that the opening in the hook had enlarged and the employer had been notified thereof presents a question for the jury — testimony of witnesses as to the attendant circumstances — act of a coemployee in tightening a rope attached to the hook.*

Under an arrangement between an elevator company and an association whereby the association furnished the scoopers to elevate wheat from vessels to the elevator and the elevator company furnished the equipment used in elevating the wheat, and also stationed a man at the boats being unloaded, whose duty it was to supply appliances when needed and to supervise the work so far as the same was under the direction and authority of the elevator company, the elevator company is liable for injuries sustained by a scooper in consequence of its negligent omission to furnish adequate or reasonably safe appliances to enable the scoopers to carry on their work.

In an action brought by an injured scooper against the elevator company it appeared that among the appliances used in elevating the grain was a hook which was designed to be hung on flanges in different parts of the vessel, and which supported a block through which a rope passed; that while the plaintiff was engaged in shifting the hook and block to another position, the rope, which had been slackened in order to permit the hook to be shifted, was suddenly drawn taut through some undisclosed cause, pulling the hook from the flange on which it had been hung, and injuring the plaintiff. The normal width of the opening in the hook was from one and three-quarters to two inches, but it had been spread apart until such width was from three and three-quarters to four inches.

It further appeared that previous to the accident the man to whom the elevator company had intrusted the duty of furnishing suitable appliances had been twice notified of the defective condition of the hook; that on the day on which the accident happened this man had stated that he had forgotten to have it repaired and that the scoopers should use it until another hook could be obtained.

*Held,* that a judgment dismissing the plaintiff's complaint should be reversed;

That the question whether the accident was due to the widening of the opening in the hook was one of fact for the jury;

That, where injuries are alleged to have resulted from an imperfect appliance, it is generally a question for the jury, taking into consideration the manner in which the accident happened and the nature and extent of the imperfection in the appliance, to decide whether the injuries are attributable to such imperfection;

That witnesses cannot testify directly that the defect in the appliance caused the accident, but that they may describe the conditions and surrounding circumstances, leaving the jury to make the deduction;

That the cause of the tightening of the rope at the time the accident occurred was not important, as, if the hook would not have left the flange except for the defect therein, the defendant would not be relieved from liability, even though some employee negligently caused the tightening of the rope.

McLENNAN, P. J., and STOVER, J., dissented.

APPEAL by the plaintiff, Michael O'Keefe, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 20th day of April, 1904, upon the dismissal of the complaint by direction of the court after a trial at the Erie Trial Term, and also from an order entered in said clerk's office on the 18th day of April, 1904, directing the dismissal of the complaint.

*John L. Ahern,* for the appellant.

*Frank Gibbons* and *Harry A. Talbot,* for the respondent.

SPRING, J.:

The plaintiff, a scooper employed in elevating wheat from the steamboat *Neptune* at the elevator of the defendant in the city of Buffalo was injured on the 6th of October, 1902, by the falling of a hook chain and block weighing forty or fifty pounds and charges the defendant with negligence in producing the injuries.

The plaintiff was employed by the Lake Carriers' Association, but by virtue of an arrangement with the defendant the latter furnished the equipment for discharging the grain at its elevator and kept a man called the monthly man present at the unloading of the boats, to supply appliances when needed, and to supervise the work so far as the same was under the direction and authority of the defendant. The relation created by this arrangement rendered the defendant liable for injuries to the scoopers caused by the negligent omission

of the defendant to furnish adequate or reasonably safe appliances to enable the men to carry on their work. (*Connors* v. *Great Northern Elevator Co.*, 90 App. Div. 311; affd., 180 N. Y. 509.)

The grain was shoveled within reach of the elevator legs by large steel shovels, there being two at each leg. There were two ropes attached to each shovel, and one end of each of these lines was fastened to a drum in the tower of the elevator carrying the leg. These lines passed through a snatch block and pulley and other appliances to the shovel, one being fastened to the front and the other to the rear of the shovel. One of these lines was used to draw the shovel toward the leg of the elevator and the other to pull it back for reloading. These ropes were under the control of the shovel tender, who regulated the operation of the shovel. The boat was of steel construction, containing steel beams, each a foot wide and about three-fourths of an inch in thickness. Extending out about three inches from the upper and also a like one from the lower edge of the beam was a flange held by an iron hook attached to a short chain of three to five links, passing over and down the opposite side of the steel beam, the line through the block pulling it straight out and down.

On the day of the accident to the plaintiff he was directed by the foreman or shovel follower to shift the block. To obey this order required him to take the block, hook and tackling from the flange, which was about as high as his head. He started to do this, when the rope, which had uncoiled from the drums as the appliances stopped to enable the shift to be made, and which was lying on the grain, was suddenly jerked taut, pulling the hook from the flange and the whole apparatus was thrown against the plaintiff injuring him. It appears that the mouth of the hook extending from the flange had been spread apart. Normally the width of the opening from the tongue or end of the crook to the inner side of the straight back was from one and three-fourths to two inches, while this one had been distended to three and three-fourths or four inches. The claim of the plaintiff is that this spreading apart of the hook rendered it less liable to retain its clutch over the flange and except for this defective condition the accident would not have happened.

The proof shows that the monthly man who was the one intrusted by the defendant with the business of furnishing suitable appliances

for the operation of these shovels knew of this defect in the hook. The accident occurred on Monday. On the Saturday forenoon preceding, Kane, who was in charge of the operation of the shovels, showed the hook to the monthly man who said he would have it fixed. Monday morning Kane asked the monthly man if it had been repaired and was informed that he had forgotten it, but to use it until another could be obtained. Three or four days before the accident O'Neill, also a shovel follower, apprised this monthly man of the defective condition of the hook. O'Neill told him that "it was too straight. * * * It would come off from the flange and might hurt somebody." The danger apprehended was not that the tensile strength of the hook had been lessened by the flaring of the opening but that it was liable to be pulled off, causing the block and chain to be thrown against some of the scoopers. The defendant, therefore, knew that the hook was defective and apparently realized in what the peril consisted.

It is a reasonable deduction that a hook with an extended opening caught over an iron band three inches in width is more apt to be pulled off by a side or upward twitch than if the tongue of the hook reached well under the flange. At least it cannot be said as matter of law that the extension of the opening was not responsible for the accident. The effect of the defective condition was for the jury to determine.

Nor does the determination of this question depend upon speculation. Practical men with this tackling explained to them might consistently reach a definite conclusion as to whether the spreading of the hook caused it to fly from the flange. It rarely can be said with absolute certainty that the injury sustained resulted from a known defective appliance. Generally, it is for the jury taking into consideration the manner in which the accident occurred and the extent and nature of the imperfect equipment to decide whether the injuries complained of are imputable to the flaw in the appliance. This rule does not imply that the jury are to be permitted to conjecture that the injuries are to be ascribed to the defect alleged. Witnesses cannot testify directly that the defect caused the accident. They describe the conditions and surrounding circumstances and the jury make the deduction. If the accident may reasonably be found to have resulted from the imperfect appliance

the jury may be allowed to draw that conclusion without entering the realm of speculation or conjecture.

Again, Kane, who was in his third year of service in following shovels, testified that he never "saw the usual ordinary hook used for * * * fastening these blocks to the beams fly off when the block was being shifted."

Just what caused the. slack of the line to be jerked tense at this particular juncture does not appear, although apparently the occurrence was not unusual. We do not regard it as very important what caused the rope to tighten. If but for the defect in the hook it would not have left the flange the defendant is not relieved from liability, even though some employee negligently may have caused the slack in the line to be suddenly taken up. (*Stringham* v. *Stewart*, 100 N. Y. 516; *Sutter* v. *N. Y. C. & H. R. R. R. Co.*, 79 App. Div. 362; *Strauss* v. *N. Y., N. H. & H. R. R. Co.*, 91 id. 583.)

The judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

All concurred, except McLENNAN, P. J., and STOVER, J., who dissented.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide event.