(68 Misc. Rep. 573.)

### PERSONS v. BUSH TERMINAL CO.

#### (Supreme Court, Trial Term, Kings County. August, 1910.)

1. MASTER AND SERVANT (§ 204*)—ASSUMPTION OF RISK—STATUTORY PROVISIONS.

Employer's Liability Act (Consol. Laws, c. 31) § 202, provides that an employé shall be presumed to have assented only to the necessary risks of the occupation, and that, in an action by an employé for injuries from any cause for which the employer could otherwise be liable, that the employé continued in the service in the same place and course of employment after his discovery, or after he had been informed of the danger of personal injury therefrom, shall not, as a matter of law, be considered as an assent by such employé to the existence or continuance of such risk, or as negligence contributing to such injury. *Held* that, in determining the issue as to the assumption of risk not necessary to the occupation of an employé, the test is whether the circumstances plainly lead to the conclusion that the risk was understood and voluntarily assumed by the employé, and the legislative intent is not affected by the phrase "as a matter of law."

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 204.*]

2. MASTER AND SERVANT (§ 204*)—ASSUMPTION OF RISK—EMPLOYÉ'S ASSENT FROM CONTINUING IN EMPLOYMENT—STATUTORY PROVISIONS.

The statute abolished the previous rule, which raised an implied assent from the employé going on with his work; something beyond the mere knowledge of the danger being now required to establish that the employé understood and assumed the risk himself.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 204.*]

3. MASTER AND SERVANT (§ 288*)—ASSUMPTION OF RISK—EVIDENCE.

A servant was employed in trucking goods from a loft toward an open exterior freight elevator, which was inclosed by adjacent walls, one side open and the other closed by a grating, and the servant had used it for several months. There was an iron sill, about four inches higher than the floor which led to the elevator, and a skid was placed against it. While plaintiff was hauling behind him on a truck a weight of over 400 pounds, he quickened into a run to overcome the grade of the skid, and one wheel of the truck ran off the skid, and he lost his hold on the handles of the truck, and fell off the elevator platform, and was injured. The testimony as to the presence of guard rails around the platform was conflicting. *Held*, that the risk of falling from the platform was not, as a matter of law, so obvious that it was assumed by the servant.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 288.*]

Action by Mary Persons, administratrix of James Burns, against the Bush Terminal Company. On motion to set aside verdict for plaintiff. Motion denied.

Martin T. Manton, for plaintiff.

James, Schell & Elkus (Joseph M. Proskauer, of counsel), for defendant.

PUTNAM, J. Plaintiff's intestate, James Burns, was a laborer in defendant's employ. His death was caused by falling from an open exterior freight elevator located between Forty-Eighth and Forty-Ninth streets, South Brooklyn, which ran in the space between defendant's storehouses 53 and 54. On the river side it was entirely open, on two other sides the elevator space was inclosed by the ad-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jacent building walls, and opposite the river side, toward First avenue, it was closed by a grating. This elevator platform measures 14 feet in its length parallel with the river, with a width of 9 feet 3 inches. Burns had used the elevator for several ·months.

About 7 a. m. of April 19, 1907, the day of the accident, Burns, with about five others (including the foreman and the assistant foreman), entered this elevator at the ground. They were first carried ·up to the fifth floor, where they deposited their lunches and some clothing. Then they went up to the seventh floor, and proceeded to truck case goods toward this elevator from the lofts. At the doorway leading into this elevator there was an iron sill about 4 inches higher than the floor. To facilitate trucking over this rise there was placed against it a wedge-shaped skid alongside the door and extending out from the sill about 18 inches.

After Burns had trucked one case weighing about 170 pounds through this doorway and had deposited it on the elevator platform, he came with a much larger case of over 400 pounds weight upon his truck, which he hauled behind him. To overcome the grade of this incline up the skid, he quickened into a little run; but when his body was through the doorway apparently a wheel caught, as afterward one wheel was found to one side, off the skid. The stoppage of the truck probably caused his grasp to slip off the handles, as Burns was seen to pitch forward on his knees, and thence to topple off the front of the elevator platform into the depths below, sustaining fatal injuries.

Defendant claimed that at the front of this platform there was maintained a barrier or guard, consisting of a movable rail set on two iron stanchions at a height of about 3 feet 5 inches from the floor. Plaintiff contended that on the morning of the accident no bar was in place. It was also testified to that such an exposed place as was this platform should have been guarded ·by folding lattice gates. The testimony as to the presence of any guard rail at this time was conflicting.

The question of defendant's negligence and the issue as to Burns' assumption of risks were submitted to the jury, who rendered a verdict for plaintiff for $5,500 damages. Defendant moves to set aside the verdict, contending that the risk of falling from this open platform was obvious, and hence was assumed by Burns, and that a contrary finding is manifestly against the weight of evidence.

This involves the power of the court, as limited by section 3 of the employer's liability act (Laws 1902, c. 600; Consol. Laws, c. 31, § 202), regarding the determination of the issue as to assumption of risks. Prior to this statute, the court could infer an assent by the employé from his mere knowledge of the risk and subsequent continuance in the employment. He was considered as having tacitly accepted and assumed the dangers from defects known or plainly observable. Choctaw Oklahoma Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Crown v. Orr, 140 N. Y. 450, 35 N. E. 648. The law maxim invoked in support of this legal inference, however, hardly bears out this extension of the rule. The maxim is not *scienti,* but *volenti non fit injuria.* The language of this ·statute mani-

fests a clear purpose to limit and change the basis upon which the employé should henceforth be held to have assumed a risk not *necessary* to the occupation. Except as to necessary risks, the employé's assent is not to be inferred from his continuance in the service after discovery or information of the danger. Such continuance after knowledge of the risk is not to be considered as an assent to the existence or continuance of such risk of injury therefrom; on the contrary, it now becomes a question of fact for the jury to decide whether the employé understood and assumed such risk of injury, subject, in a proper case, to the power "to set aside a verdict rendered contrary to the evidence."

The new test is not the simple one whether the risk was known or observed by the employé. Even if the employé had been informed of the danger, his assent does not follow therefrom. The test now is whether the circumstances are such as plainly to lead to the conclusion that the risk was understood and was voluntarily assumed by the employé. This intent of the Legislature is not defeated or narrowed by the expression "as a matter of law." The previous rule which raised an implied assent from his going on with the work was a matter of legal inference. This inference seems now rejected, both as a basis for instruction to the jury and for a ruling of the court on the sufficiency of proof. Clark v. N. Y. Central & H. R. R. R. Co., 191 N. Y. 416, 84 N. E. 397. Something beyond mere knowledge of the danger is now required to establish that the employé understood and assumed the risk himself, so as to relieve the employer from his duty. Travis v. Haan, 119 App. Div. 138, 140, 103 N. Y. Supp. 973; Knezevich v. Bush Terminal Co., 127 App. Div. 54, 111 N. Y. Supp. 255.

Defendant's negligence in respect to guarding this platform is not disputed upon this motion. But Burns' knowledge of the risks resulting to him from such negligence of defendant is not shown. His going up with others on this platform, and his stowage of one case upon it, undoubtedly gave him an opportunity to observe if the rail was not in place. But this discovery, if made, would not, as a matter of law, amount to an assumption of risk, because he may not have understood the danger that could come from a misstep, or by the slipping of his grasp from the truck handles, as he may never have realized that such a slip might impel his body from this doorway, across the intervening platform space, and off its outer edge. It cannot be said by the court that the circumstances here shown lead so plainly to the conclusion that Burns understood and voluntarily assumed these risks that the court can set aside the finding by the jury to the contrary. Reilly v. Troy Brick Co., 184 N. Y. 399, 77 N. E. 385. Of course, a tool actually held in the hand, and then used with knowledge of its defect, may be regarded as a danger understood and assumed. Vaughn v. Glens Falls Cement Co., 105 App. Div. 136, 93 N. Y. Supp. 979; Kellogg v. New York Edison Co., 120 App. Div. 410, 105 N. Y. Supp. 398.

In the present case, it does not appear that the verdict should be set aside as contrary to the evidence, and the defendant's motion is therefore denied.

Motion denied.