ROSSITER v. PETER COOPER'S GLUE FACTORY.

(Supreme Court, Appellate Division, Second Department. March 8, 1912.)

1. MASTER AND SERVANT (§ 265*)—INJURIES—NEGLIGENCE—BURDEN OF PROOF.
   It is presumed, in a servant's action for injuries, that the master discharged his duties to properly instruct the servant and provide safe appliances.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

2. MASTER AND SERVANT (§ 129*)—INJURIES—PROXIMATE CAUSE.
   Where a servant testified that he was drawn into a boiling vat by the pole he was using to stir hides through some unexplained cause, his employer's failure to have up a 32-inch railing, which was ordinarily used to guard the vats, could not have been the proximate cause of the servant's injuries by falling into the vat.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

3. MASTER AND SERVANT (§ 125*)—NEGLIGENCE.
   An employer was only bound to guard against dangers inhering in the business, which should have been known to him by exercising ordinary care, and not obvious upon ordinary inspection by the employé.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 243–251; Dec. Dig. § 125.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date; & Rep'r Indexes.

4. MASTER AND SERVANT (§ 217*)—ASSUMING RISK—ABSENCE OF GUARD.

Where an employé knew that boiling vats were not guarded as required by Labor Law (Consol. Laws 1909, c. 31) § 81, and knew of the dangers incident to the absence of rail guards, he waived the benefits of the statute and assumed the risk of injury in working without a guard.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

5. EVIDENCE (§ 65*)—PRESUMPTIONS—KNOWLEDGE OF LAW.

An employé must be presumed to have known that the statute required guard rails around vats.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 85; Dec. Dig. § 65.*]

6. MASTER AND SERVANT (§ 204*)—ASSUMED RISK—WAIVER OF STATUTORY PROTECTION.

Under the rule that one may waive a statute or constitutional provision in an action for his benefit or protection if it does not involve public policy or morals and cannot subsequently invoke its protection, an employé could waive the benefits of Labor Law (Consol. Laws 1909, c. 31) § 81, requiring all vats, pans, etc., to be properly guarded, so as to prevent recovery for injuries from absence of guards.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

Hirschberg, J., dissenting.

Appeal from Trial Term, Kings County.

Action by James Rossiter against Peter Cooper's Glue Factory. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, WOODWARD, BURR, and RICH, JJ.

John C. Robinson, for appellant.

Don R. Almy, for respondent.

WOODWARD, J. The complaint in this action appears to have been framed on the theory that the action was one falling within the purview of the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204), though upon the trial this view was abandoned, and the case proceeded as one at common law. The plaintiff, 51 years of age, had been in the employ of the defendant for 33 years in making glue; his occupation generally being the cutting up and preparing hides, sinews, etc., for the boiling process. Two weeks prior to the accident, the plaintiff was taken from his accustomed work, and placed under the direction of the foreman of the boiling house. During the two weeks the plaintiff appears to have done various kinds of work, and on the day of the accident he tells the story as follows:

"Then he" (O'Neil) "said he would bring me upstairs to show me the materials upstairs, how it was boiled, and stirred up. I followed Jerry up the stairs. I found vats there. They were filling them up. There were 14 vats on the floor. * * * On this morning, when I came up there to work, at about 11 o'clock they were filling the boilers. I believe it was 6 boilers they were filling, 6 out of 14. They were putting all sorts of different hides or skins, as comes in in the wagon, into the boilers. In these vats they were putting these skins in, the material was left from the run that we had previously took out. * * * The process of boiling those skins is by reason of

introducing the live steam into the boilers—introducing the live steam into the boilers or vats, and then he told me that when I should come back from dinner, that we should stir up those skins. I went out to dinner and got back about 1 o'clock. When I came back I reported to Mr. O'Neil. Mr. O'Neil pointed to No. 4 vat and told me I would find a pole in that and to stir them up."

While engaged in stirring up these skins, the plaintiff in some manner lost his balance and fell into the boiling vat, sustaining injuries of a painful and more or less permanent character, for which the jury has awarded him a verdict of $15,000. From the judgment entered upon this verdict, and from the order denying defendant's motion for a new trial on the minutes, the latter appeals.

There was no evidence in this case of any failure on the part of the defendant to provide reasonably safe tools and appliances; no evidence of any failure on the part of the defendant to provide a reasonably safe place for the plaintiff to perform his work, except as that may follow from the failure on the part of the defendant to guard the vats, in violation of the provisions of section 81 of the Labor Law (Laws 1909, c. 31), which provides that:

"All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws and machinery, of every description, shall be properly guarded."

Indeed, the respondent, after calling attention to the charge of the court, declares in his brief that:

"It appears that the case was not submitted to the jury upon the question as to whether or not the defendant had failed to give the plaintiff proper instructions, or whether or not the defendant was guilty of negligence in failing to provide the plaintiff with reasonably safe appliances."

[1] As to these matters, then, the presumption that the master has discharged his duty is not overcome, and there can be no liability on the part of the defendant because of any alleged failure in respect to these common-law duties of the master. It affirmatively appears, and without dispute, that the defendant had supplied guards for these several vats; that such guards were in the room at the time the plaintiff went there; and that one guard at least was in place, and came to the notice of the plaintiff before he began the work, and at common law this would be a complete performance of the duty of the master to supply reasonably safe appliances. It appears, however, that, in spite of the provisions of the statute that "no person shall remove or make ineffective any safeguard around or attached to machinery, vats or pans, while the same are in use, unless for the purpose of immediately making repairs thereto, and all such safeguards so removed shall be promptly replaced," some one had taken the guard from around the particular vat where the plaintiff was put to work, and the case was submitted to the jury upon the theory that, this guard not being in place, the jury might find the master liable, if such displacement of the guard was the cause of the accident.

[2] There are two difficulties in sustaining this verdict. In the first place, the plaintiff's testimony, which is all there is as to the happening of the accident, is to the effect that he was drawn into the vat by the pole which he was using, through some unexplained cause; through a cause which he appears to be wholly unable to suggest, and

which, so far as the record goes, never occurred before or since the accident. There is not the slightest evidence that the absence of the guard rail had anything to do in producing the accident; the proximate cause of the accident was, not that there was not a railing in front of this tank or vat, but that the pole which the plaintiff was using, and which appears to have been merely an ordinary stick 8 to 10 feet in length, for some unexplained reason exerted a drawing force upon the plaintiff sufficient to overbalance him and cause him to fall into the vat. There is no evidence to suggest how strong this drawing force may have been; no evidence to show that it was not strong enough to have produced the same result even had the barrier been properly placed, for in the practical work of stirring up a large vat filled with hides and scraps the guard rail could not have been very high, and the testimony is to the effect that it was about 32 inches, or rather below the middle of a man of ordinary height. The question of the duty of the defendant to give the plaintiff instructions being out of the case, it being assumed that the simple pole was a proper tool or appliance, for this question was not submitted to the jury, it is difficult to understand how a jury could properly find that the failure to have the guard rail in place was the proximate cause of the accident, when the only evidence in the case is that the accident was caused by some drawing power exerted upon this stick.

[3] Of course, if this drawing power was strong enough to overbalance the plaintiff, it might have overbalanced him if there had been a low railing intervening, in which event there could be no possible liability on the part of the defendant, unless the danger to be apprehended from the exertion of the drawing power was one which it was the master's duty to apprehend and guard against, and this could only arise by showing that the danger was one inhering in the business or occupation, and which was known or should have been known to the defendant, while not obvious to the ordinary inspection of the employé. No one attempts to say what this drawing force was, and as the evidence shows that this boiling house had been in operation for at least 18 years, it is fair to presume that if this danger had been a recurring one, or one incident to the work, some evidence of the fact would have been produced. As it is, the court instructed the jury that the defendant owed the plaintiff no duty of instructing him as to the danger of falling into the vat, so that the case presents no element of a failure to disclose inherent dangers known to the master and unknown to the servant.

[4] Assuming, however, that the absence of the guard rail was the proximate cause of the accident, the plaintiff, so far as appears, was a reasonably intelligent man. He knew as well as the defendant could possibly have known that to fall into a vat of boiling materials was dangerous; he knew that there was no guard rail; the fact was open and obvious, and his attention was called to the fact by his observation that there was such a railing around one of the 14 tanks in the room at the very time that he went to work. He testifies to this, and he says he did not think a railing was necessary; that he did not ask for one because he did not think they had one for him, etc. The evidence shows that these guard rails were provided, that they were in the

very room where the vat was located, and there is no suggestion that any one refused to permit of their use. The plaintiff knew all of the dangers of the situation which it was the master's duty to know, so far as the record discloses.

[5] He must be presumed to have known that the law required these guard rails; that he had a right to have them for his own protection, yet, with his attention called to the matter particularly, he elected to go to work without the railing, and by this he must be assumed to have waived the benefits of the statute and to have assumed the risks incident to the open and obvious dangers of the situation.

[6] That a party may waive a rule of law, or a statute, or even a constitutional provision, enacted for his benefit or protection, where it is exclusively a matter of private right, and no consideration of public morals are involved, and having once done so he cannot subsequently invoke its protection, is too well established to be questioned. Mayor, etc., of New York v. M. R. Co., 143 N. Y. 1, 26, 37 N. E. 494, and authorities there cited. The requirement of this statute for a railing in position is in addition to the common-law duties of the master; but the servant has a perfect right, in the full knowledge of the law and the facts, to waive this additional protection, and, under the circumstances disclosed by the evidence in this case, we are of the opinion that the statute was waived, and that the plaintiff, having established no possible cause of action outside of the statute, is not entitled to recover.

The judgment and order appealed from should be reversed, and a new trial granted; costs to abide the event.

RICH, J., concurs. JENKS, P. J., and BURR, J., concur on the last ground stated in the opinion. HIRSCHBERG, J., dissents.