(155 App. Div. 413.)

### ROSSITER v. PETER COOPER'S GLUE FACTORY.

(Supreme Court, Appellate Division, Second Department.   February 28, 1913.)

1. NEGLIGENCE (§ 61*)—PROXIMATE CAUSE.
    · Where several proximate causes contribute to an accident, and each is an efficient cause, without which the accident would not have happened, it may be attributed to all or any of them, and the number of proximate causes was no defense.

    [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 74, 75; Dec. Dig. § 61.*]

2. MASTER AND SERVANT (§ 288*) — INJURIES TO SERVANT — ASSUMPTION OF RISK.
    Where a master directed a servant to stir the material in a boiling vat in a glue factory with a very short pole, which required him to stoop over the unguarded tank, the servant, who was not warned, did not as a matter of law assume the risk of injury from the position, and from a break in the steam pipes permitting the escape of steam, which tended to push the pole away from him, for a servant assumes only those risks which occur after the due performance by the master of his duties.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1005, 1068–1088; Dec. Dig. § 288.*]

3. MASTER AND SERVANT (§ 265*) — INJURIES TO SERVANT — ASSUMPTION OF RISK—BURDEN OF PROOF.
    Where the question of assumption of risk of injury by a servant is for the jury, the burden of proof is upon the master.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*]

4. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—ACTIONS—QUESTIONS FOR JURY,
    In a personal injury action by a servant, evidence *held* sufficient to warrant, both under the common law and statute, the submission of the case to the jury.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

Appeal from Trial Term, Kings County.

Action by James Rossiter against Peter Cooper's Glue Factory. From a judgment for defendant, and an order denying his motion for a new trial, plaintiff appeals.   Reversed and remanded.

See, also, 149 App. Div. 752, 134 N. Y. Supp. 162.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and RICH, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Don R. Almy, of New York City, for appellant.
James B. Henney, of New York City, for respondent.

RICH, J. This appeal is from a judgment dismissing the plaintiff's complaint in an action by an employé to recover for personal injuries, and also from an order denying plaintiff's motion for a new trial. The complaint alleges a cause of action under the Employer's Liability Act (Consol. Laws 1909, c. 31, §§ 200–204), at common law, and also under section 81 of the Labor Law (Consol. Laws 1909, c. 31). The notice served under the Employer's Liability Act was excluded as insufficient, and, when the plaintiff rested his case, the complaint was dismissed upon the ground that the cause of action under the Labor Law could not be maintained (in making this ruling the learned court followed the decision of this court on a former appeal), and also upon the ground that there was no evidence establishing defendant's liability at common law. As indicated, the case has been here before. On the first trial the plaintiff obtained a judgment which was reversed. 149 App. Div. 752, 134 N. Y. Supp. 162. Upon the second trial, the plaintiff proceeded upon the theory that the defendant was liable upon each of the causes of action set forth in the complaint, and he gave some additional evidence which it is claimed obviates the difficulties which prevented an affirmance when the case was here before. I think he is right, and I am also of the opinion that the judgment must be reversed on the authority of Fitzwater v. Warren et al., 206 N. Y. 355, 99 N. E. 1042; Welch v. Waterbury Co., 206 N. Y. 522, 100 N. E. 426.

The plaintiff had been in defendant's service at the time of the accident 32 years, being employed nearly all of that time in the skinning department. Two or three weeks before the accident he was transferred to the evaporating room, and a day or two before the accident he was sent to the foreman of the boiling house. At about 11 o'clock on the day of the accident, the foreman directed plaintiff to accompany him upstairs to the floor of the boiling room. There were a number of vats in this room in which material entering into the manufacture of glue was boiled and treated. The vats were five feet wide, ten feet long, and about five feet deep. The top of the vats were level with the floor. The vats are filled with glue stock (pieces of skins, hides, and meat of different shapes and sizes, some being three feet in diameter), and the vats are then filled with boiling water which is kept boiling by live steam which is turned into the bottom of the tank. In order that the material may be properly dissolved, it was necessary to keep it continuously in motion. The foreman directed plaintiff to go to vat No. 4. Plaintiff testifies that he said:

"Jim, you go to No. 4 vat. There is a pole sticking into it, and stir them up, break them up."

The defendant furnished three wooden poles for use in this room, two of which were nine feet long and the third, about six feet, was in No. 4. It seems that a person could stand erect when using a nine-foot pole and reach the material in the bottom of the vat, but that it was more or less dangerous to use the shorter pole, because, in or-

der to reach the material in the bottom of the tank, it was necessary to bend over the tank, with the liability that, when the moving contents of the vat came in contact with the pole, there was danger of the person losing his balance. The defendant furnished movable guards for use around the tops of the tanks. When the order was given to the plaintiff, O'Neill and a workman named Ford were mixing the contents of two nearby vats, each using a long pole. The short pole, the only one available, was in the No. 4 vat, which was unguarded, and it is claimed that no instruction was given to him as to the manner in which he was to use the pole, and that he was not warned of any danger, and it appears that he was not informed as to the method of doing the work. He says that he had never seen the pole, did not know its length, and had never seen anything in the boiling room before that day. The plaintiff went to vat No. 4 as directed. He could not see into the boiling vat, and, when he attempted to push the end of the pole to the bottom of the tank, it was necessary for him to stoop over to within a foot of it. As he did this, something hit the pole, "the pole kicked right out of my hand. * * * When that happened, I lost my balance and I fell in."

Defendant's night foreman testified that he worked nights on vat No. 4, but that he never worked on it without a guard rail around it; that about six weeks before the accident to plaintiff, while he was on vat No. 4, he put the end of a nine-foot pole on the material at the bottom of the vat, when there was a strong kick against the end of the pole which caused him to lose his balance and fall against the guard rail around the tank; that there was a split or crack ten or twelve inches long on the top of the steam pipe in one corner of the vat, to which he attributed the side pressure he had noticed; that he had experienced the same kick five or six times before the accident, under the same conditions that existed when plaintiff was injured. He reported the condition at this tank to the night superintendent, who promised to have the steam pipe repaired, but it had not been done at the time of the accident.

It is claimed that several things contributed to the plaintiff's injury. The defective condition of the steam pipe permitted a greater pressure of steam to come in contact with the material, keeping it in constant rapid motion; the pole was so short that it was impossible to operate it without stooping over the vat; and the absence of the guard rail.

[1] When several proximate causes contribute to an accident, and each is an efficient cause without the operation of which the accident would not have happened, it may be attributed to all or any of the causes. Ring v. City of Cohoes, 77 N. Y. 83, 90, 33 Am. Rep. 574; Ehrgott v. Mayor, etc., of City of N. Y.; 96 N. Y. 264, 48 Am. Rep. 622; Thompson v. Town of Bath, 142 App. Div. 331, 126 N. Y. Supp. 1074; Sweet v. Perkins, 196 N. Y. 483, 90 N. E. 50.

[2, 3] I think that the presumption arises that if the plaintiff had been provided with a pole of suitable length, or if the guard rail had been in place, the accident would not have happened. The dangers to which the plaintiff was exposed were not open and obvious, and

were not known to him. They were not incidental risks due to the negligence of the defendant, and he did not assume the risk of being precipitated into the vat as matter of law. Gorman v. Millikan, 142 App. Div. 207, 126 N. Y. Supp. 864. The risks of service which a servant assumes are those only which occur after the due performance by the employer of those duties which the law enjoins upon him. Fitzwater v. Warren, supra; Welch v. Waterbury Co., supra; Long v. Fulton Contracting Co., 140 App. Div. 685, 125 N. Y. Supp. 542; Persons v. Bush Terminal Co., 68 Misc. Rep. 573, 125 N. Y. Supp. 277. The question of assumption of risk was for the jury, and the burden of proof was with the defendant. Fitzwater v. Warren, supra.

[4] It was for the jury to say whether the defendant was negligent in setting the plaintiff to work at the unguarded vat without warning or instruction, with a pole of the length of the one furnished him, with whatever danger there was of its being deflected by the nature of the work or the condition of the vat and of his losing his balance thereby. In short, under the combined facts shown by the evidence, the plaintiff was entitled under the common law and statute to have his case submitted to the jury. O'Keefe v. Great Northern Elevator Co., 105 App. Div. 8, 93 N. Y. Supp. 407; Smith v. Manhattan R. Co., 112 App. Div. 202, 98 N. Y. Supp. 1; Warren v. Post & McCord, 128 App. Div. 572, 112 N. Y. Supp. 960. And the exceptions to the refusal of the learned trial court to submit these questions to the jury present error which requires a reversal of the judgment.

Judgment and order reversed and a new trial granted, costs to abide the event. All concur.